CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
amandas@potterhandy.com
        Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Gilbert Salinas,** | **Case**. 3:21-cv-00298-CAB-BGS |
| Plaintiff, | **First Amended Complaint for Damages and Injunctive Relief for Violations of:** Unruh Civil Rights Act and Unfair Competition Law. |
| **v.** | |
| **LFS Development, LLC,** a Delaware Limited Liability Company; and Does 1-10; | |
| Defendant, | |

Plaintiff Gilbert Salinas complains of LFS Development, LLC, a Delaware Limited Liability Company; and Does 1-10 ("Defendant"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He is a paraplegic who uses a wheelchair for mobility.

2. Defendant LFS Development, LLC, a Delaware Limited Liability

1

First Amended Complaint                    3:21-cv-00298-CAB-BGS

Company owns and operates the InterContinental San Diego located at 901 Bayfront Ct., San Diego, California currently and at all times relevant to this complaint.

3.  Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION:**

4.  This Court has removal jurisdiction over this action under 28 U.S. Code § 1441 because this matter originally contained an ADA claim and the defendants removed the case from state court to federal court.

5.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**PRELIMINARY STATEMENT**

6.  This is a lawsuit challenging the reservation policies and practices of a place of lodging. Plaintiff does not know if any physical or architectural barriers exist at the hotel and, therefore, is not claiming that that the hotel has violated any construction-related accessibility standard. Instead, this is about the lack of information provided on the hotel's reservation website that would

2

permit plaintiff to determine if there are rooms that would work for him.

7.   After decades of research and findings, Congress found that there was a "serious and pervasive social problem" in America: the "discriminatory effects" of communication barriers to persons with disability. The data was clear and embarrassing. Persons with disabilities were unable to "fully participate in all aspects of society," occupying "an inferior status in our society," often for no other reason than businesses, including hotels and motels, failed to provide information to disabled travelers. Thus, Congress decided "to invoke the sweep of congressional authority" and issue a "national mandate for the elimination of discrimination against individuals with disabilities," and to finally ensure that persons with disabilities have "equality of opportunity, full participation, independent living" and self-sufficiency.

8.   As part of that effort, Congress passed detailed and comprehensive regulations about the design of hotels and motels. But, as importantly, Congress recognized that the physical accessibility of a hotel or motel means little if the 61 million adults living in America with disabilities are unable to determine which hotels/motels are accessible and to reserve them. Thus, there is a legal mandate to provide a certain level of information to disabled travelers.

9.   But despite the rules and regulations regarding reservation procedures, a 2019 industry article noted that: "the hospitality sector has largely overlooked the importance of promoting accessible features to travelers."

10. These issues are of paramount important. Persons with severe disabilities have modified their own residences to accommodate their unique needs and to ameliorate their physical limitations. But persons with disabilities are never more vulnerable than when leaving their own residences and having to travel and stay at unknown places of lodging. They must be able to ascertain whether those places work for them.

First Amended Complaint                                    3:21-cv-00298-CAB-BGS

**FACTUAL ALLEGATIONS:**

11. Plaintiff planned on making a trip in September of 2020 to the San Diego California, area.

12. He chose the InterContinental San Diego located at 901 Bayfront Ct., San Diego, California to book a room.

13. Due to Plaintiff's condition, he is unable to, or seriously challenged in his ability to, stand, ambulate, reach objects mounted at heights above his shoulders, transfer from his chair to other equipment, and maneuver around fixed objects.

14. Thus, Plaintiff needs an accessible guestroom and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely.

15. On September 20, 2020, while in California, Plaintiff went to the InterContinental San Diego reservation website at https://www.ihg.com/intercontinental/hotels/us/en/san-diego/sanhb/hoteldetail seeking to book an accessible room at the location.

16. This is the hotel's website and it is owned and operated by the Defendants, or run by a third party on behalf of the defendant and supplied with information from the defendants, and it permits guests to book rooms at hotel.

17. Plaintiff found that the hotel had a "King Deluxe Mobil Accessible Roll Shwr" room available for rent which was the type of room plaintiff was looking for. But the reservation system had zero accessibility information about this particular hotel room.

18. While the hotel's landing page had some general boasts that there were "ADA rooms" and rooms that were "accessible" with "accessible" features, there were zero descriptions or details about any individual guestroom

4

1  regarding the mobility accessibility features.

2  19. The entirety of information for this particular room is seen in the

3  following screen grab:

**Only 2 Rooms Left!**

King Deluxe Mobil Accessible Roll Shwr

Accessible room with city views seen from floor-to-ceiling windows. 435 square feet with one king bed, chaise lounge and desk. Features include a roll-in shower, wireless internet, Keurig coffee maker, mini bar, 49in TV, robe and slippers, safe, clock/radio and additional amenities.

 3

Show Less

12  20. There is no information within the hotel's reservation website about the

13  accessibility of the bed, desk, sink, or toilet for this accessible room.

14  21. There are no descriptions or details about the roll-in shower, such as

15  whether it has a shower seat or any grab bars.

16  22. Plaintiff found that there was insufficient information about the

17  accessible features in the "accessible rooms" at the Hotel to permit him to

18  assess independently whether a given hotel room would work for him.

19  23. Plaintiff often uses a type of wheelchair that he cannot get wet when he

20  showers. He needs to roll into the shower enclosure and then transfer to an in-

21  shower seat and push his chair out of the path of the water. But there is no

22  information on the Hotel reservation website about whether the roll-in shower

23  has an in-shower seat or any grab bars mounted above the seat for transfer

24  (required by the ADA). So, Plaintiff can assume he can roll into that shower but

25  has no other information about whether he can use this shower.

26  24. Plaintiff has had tremendous difficulty with using lavatory sinks in the

27  past because sinks were cabinet style sinks or had low hanging aprons that did

28  not provide knee clearance for a wheelchair user to pull up and under or,

First Amended Complaint                                    3:21-cv-00298-CAB-BGS

alternatively, where the plumbing underneath the sink was not wrapped with insulation to protect against burning contact to his knees. Here, the Hotel reservation website provides no information about the accessibility of the sinks in the accessible guestroom.

25. Plaintiff has had tremendous difficulty using desks and tables that did not provide knee and toe clearance for a wheelchair user to pull up and under the table/desk. Here, the Hotel reservation website provides no information about the accessibility of the table/desk in the accessible guestroom. This leaves Plaintiff unsure he will be able to use the table/desk in the Hotel room, which is important to him.

26. Because Plaintiff cannot transfer from his wheelchair to a toilet unless there are grab bars at the toilet to facilitate that transfer, he needs to know that the toilet is accessible. But the Hotel reservation website does not provide any information whatsoever about the accessibility of the toilet.

27. Because the plaintiff is in a wheelchair and must transfer from that wheelchair into the bed, he needs to know if the claimed ADA accessible rooms have the ADA-mandated, 30-inches of clear space around the beds so that he can successfully transfer to the bed. But, here, the hotel says nothing about the accessibility of the bed.

28. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for him. Plaintiff, like the vast majority of wheelchair users, simply needs a handful of features to be identified and described with a modest level of detail to make an independent assessment of whether the "accessible" hotel room works for him. These things comprise the basics of what information is reasonably necessary for Plaintiff (or any wheelchair user) to assess independently whether a given hotel or guest room meets his or her accessibility needs.

First Amended Complaint                    3:21-cv-00298-CAB-BGS

29. Because the Defendants have failed to identify and describe the core accessibility features in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his accessibility needs, the Defendants fail to comply with its ADA obligations and the result is that the Plaintiff is unable to engage in an online booking of the hotel room with any confidence or knowledge about whether the room will actually work for him due to his disability.

30. This lack of information created difficulty for the Plaintiff and the idea of trying to book this room -- essentially ignorant about its accessibility -- caused difficulty and discomfort for the Plaintiff and deterred him from booking a room at the Hotel

31. Plaintiff travels frequently and extensively, not only for non-litigation reasons but also because he is an ADA tester and actively engaged in finding law breaking businesses and hauling them before the courts to be penalized and forced to comply with the law.

32. As he has in the past, Plaintiff will continue to travel to the San Diego are, on a regular and ongoing basis and will patronize this Hotel once it has been represented to him that the Defendant has changed its policies to comply with the law and to determine if the Hotel is physically accessible as well as complying with required reservation procedures. Plaintiff will, therefore, be discriminated against again, i.e., be denied his lawfully entitled access, unless and until the Defendant is forced to comply with the law.

33. Plaintiff has reason and motivation to use the Defendant's Hotel reservation system and to stay at the Defendant's Hotel in the future. Among his reasons and motivations are to assess these policies and facilities for compliance with the ADA and to see his lawsuit through to successful conclusion that will redound to the benefit of himself and all other similarly situated. Thus, Plaintiff routinely revisits and uses the facilities and

First Amended Complaint                                    3:21-cv-00298-CAB-BGS

accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

34. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

35. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

36. Any violation of rights granted by the ADA is a per se violation of the Unruh Civil Rights Act. Cal. Civ. Code, § 51(f). Plaintiff alleges that his *rights* granted under the ADA were violated and, thus, there has been a violation of the Unruh Civil Rights Act.

37. Under the ADA, it is an act of discrimination to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges advantages or accommodations to person with disabilities unless the entity can demonstrate that taking such steps would fundamentally alter the nature of those goods, services, facilities, privileges advantages or accommodations. See 42 U.S.C. § 12182(B)(2)(A)(ii).

38. Specifically, with respect to reservations by places of lodging, a defendant must ensure that its reservation system, including reservations made by "any means," including by third parties, shall:

a. Ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

b. Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; and

c. Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems.

*See* 28 C.F.R. § 36.302(e).

39. Here, the defendant failed to modify its reservation policies and procedures to ensure that it identified and described accessible features in the hotels and guest rooms in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs and failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms.

40. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, failing to comply with the ADA with respect to its reservation policies and practices.

41. Because the violation of the Unruh Civil Rights Act resulted in difficulty and discomfort for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. See Civ. Code § 52(a).

9

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNFAIR COMPETION LAW** (On behalf of Plaintiff and against all Defendants.) (Bus. & Prof. Code § 17200 et seq.)

42. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

43. The defendants' actions, as outlined above, violate the Americans with Disabilities Act and the Unruh Civil Rights Act and, thus, are unlawful and, therefore, prohibited by California's Unfair Competition Law ("UCL").

44. Under the UCL, the court can enjoin these unlawful acts. Bus & Prof. Code § 17203.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief under the Business and Professions Code, compelling Defendants to honor the rights of the plaintiff under the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. For equitable nominal damages for violation of civil rights. See *Uzuegbunam v. Preczewski*, --- U.S. ---, 2021 WL 850106 (U.S. Mar. 8, 2021) and any other equitable relief the Court finds appropriate.

3. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

First Amended Complaint                                    3:21-cv-00298-CAB-BGS

4.  Reasonable attorney fees, litigation expenses and costs of suit, pursuant to Cal. Civ. Code § 52(a).


Dated: April 23, 2021                CENTER FOR DISABILITY ACCESS

                                     By:  /s/ Russell Handy
                                     Russell Handy
                                     Attorney for Plaintiff

First Amended Complaint                    3:21-cv-00298-CAB-BGS